**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PHILIP J. ASHLEY<br><br>*Plaintiff*,<br><br>v.<br><br>ROBIN CARNAHAN, in her official capacity as Administrator of the GENERAL SERVICES ADMINISTRATION<br><br>*Defendant*. | Civil Action No. 18-cv-00574 (JMC) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF RELATING TO THE SECTION 794d CLAIMS AND IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

I.  INTRODUCTION

The *Orozco* decision confirms that Mr. Ashley has a private right of action against GSA for its failures to follow Section 508.[1] *Orozco v. Garland*, 60 F.4th 684 (D.C. Cir. 2023). GSA does not dispute this. Rather, GSA's supplemental briefing offers a variety of new arguments unrelated to the *Orozco* decision, and it reargues points that have already been covered by prior briefing. In doing so, GSA ignores—and at times, mischaracterizes—the undisputed record that conclusively establishes that GSA discriminated against Mr. Ashley by failing to give him comparable access to its technology as required by Section 508. To be sure, even the novel framework GSA for the first time suggests in its supplemental brief would not rescue GSA from its systemic Section 508 failures. Incredibly, GSA even seeks to blame Mr. Ashley for its own failures by arguing now—despite having never made such a claim—that Mr. Ashley was required to help fix GSA's failures by engaging in the "interactive process." As set forth below, however, the interactive process has no bearing on whether GSA failed to comply with Section 508: it is reserved for employees who work with their employers to find reasonable accommodations. This Court should deny GSA's motion for summary judgment on Mr. Ashley's Section 508 claim and grant Mr. Ashley's motion because there is no genuine dispute that GSA has violated Section 508. *See* Mem. in Opp'n to Def.'s Mot. for Summ. J. & in Supp. of Pl.'s Cross Mot. for Partial Summ. J. at 24-28, ECF No. 81 ("Pl.'s Mem.").

II.  ARGUMENT

   A.  **GSA'S SUPPLEMENTAL BRIEF IS PROCEDURALLY IMPROPER**

GSA takes the extraordinary step of asking the Court to use the pending dispositive

---

[1] Throughout this brief, Mr. Ashley has referred to Section 508 and Section 794d interchangeably.

motions to establish a new legal framework for Section 508 claims that is not supported by the statutory language, the regulations, or precedent and that would be burdensome on disabled individuals who seek injunctive relief against the government for discrimination resulting from the government's own failure to maintain accessible electronic and information technology. *See* Def.'s Suppl. Brief Relating to the Section 794d Claims & in Further Supp. of Def.'s Mot. for Summ. J. & Opp'n to Pl.'s Cross Mot. for Partial Summ. J., ECF No. 102 ("GSA Supp. Br."). GSA's brief makes a host of new arguments that could have been made earlier in the case and that have nothing to do with the *Orozco* decision. These arguments should be stricken from GSA's brief as a matter of fairness. *See MBI Grp., Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 575 (D.C. Cir. 2010) (Though "'[t]here is no bright-line rule to determine whether a matter has been properly raised' . . . 'district courts, like this court, generally deem arguments made only in reply briefs to be forfeited.' . . . '[R]eply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.'" (citations omitted)). *See also Jones v. Mukasey*, 565 F. Supp. 2d 68, 81 (D.D.C. 2008) ("As the D.C. Circuit has consistently held, the Court should not address arguments raised for the first time in a party's reply.").

In particular, GSA now argues for the first time (1) that engagement in the interactive process is required for injunctive relief under Section 508 claims, GSA Supp. Br. at 31, ECF No. 102, (2) that Mr. Ashley is not entitled to an injunction, *id.* at 33-34, (3) that there is no genuine issue of material fact regarding any ICT failure to conform to the **revised 508 standards**, *id.* at 31[2], and (4) that Mr. Ashley's claims are all moot, *id.* at 34. None of these arguments have been

---

[2] While GSA previously made the conclusory statement that "Plaintiff has failed to establish through expert testimony or otherwise that the Subject Technology is, in fact, not compliant with Section 508," Def.'s Mem. in Supp. of its Mot. to Dismiss or for Summ. J. at 11, ECF No. 80-1, GSA did not provide any evidentiary support for that argument and it has never heretofore

made previously despite the time for advancing contentions having come and gone years ago. Discovery closed in 2019, and these augments have nothing to do with the *Orozco* decision.

In advancing these new arguments, GSA spends pages setting out why, in its view, the Court should apply the Access Board standards *in this case* to determine Section 508 compliance. *See* GSA Supp. Br at 10. But, GSA's eleventh-hour policy-making effort finds no support in *Orozco* or any other case. In fact, *Orozco* had nothing to do with Access Board standards. And, GSA concedes that the Access Board standards were issued on January 18, 2017—more than a year before Mr. Ashley filed his complaint with this Court on March 14, 2018. GSA Supp. Br. at 10, ECF No. 102. GSA could have raised this contention during discovery but it failed to do so. In fact, GSA was given the opportunity to offer its Access Board standards argument in discovery in response to the following contention interrogatory:

> To the extent you contend that GSA has complied with Section 508 with respect to the development, procurement, maintenance, and/or use of the Technology-At-Issue and any additional electronic and information technology you identify in your response to Interrogatory No. 10, identify all facts and circumstances on which you base your contention.

Ex. 1 (Def.'s Resps. to Pl.'s First Set of Interrogs.) at 21. Instead, GSA simply asserted—without more—that "to the best of its knowledge, it has complied with Section 508 with respect to the development, procurement, maintenance, and/or use of the Technology-At-Issue." *Id.* GSA never supplemented its response to this interrogatory under Fed. R. Civ. P. 26(e)(1).[3] GSA did not even

---

suggested—let alone argued—that the "revised 508 standards" have any place in this analysis.
[3] Fed. R. Civ. P. 26(e)(1) provides that "[a] party who has made a disclosure under Rule 26(a)— or who has responded to an interrogatory, request for production, or request for admission— **must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect**, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." (emphasis added).

cite or attach the Access Board standards to any of its summary judgment briefing. To allow GSA to raise these issues now—on the eve of trial and years after discovery has closed—would work severe prejudice to Mr. Ashley.

Moreover, GSA's belated argument is contradicted by the evidence in this case. As set forth in II.C.1 *infra*, the evidence produced in discovery shows that GSA made *no effort* to comply with Section 508 in most cases and, if it did, it was not until after an individual with a disability complained about accessibility problems.[4] GSA's supplemental briefing on this issue extends far beyond what the Court permitted here and should be struck.

**B. THERE IS NO SUPPORT FOR GSA'S CONTENTION THAT SECTION 508 REQUIRES THE INTERACTIVE PROCESS**

GSA seeks to re-write the law on Section 508 to require that victims of discrimination be required to demonstrate that they engaged in the interactive process. There is simply no support for GSA's view of how the law should be applied against Mr. Ashley. The interactive process refers to the process by which employers and employees with disabilities work together to come up with a reasonable accommodation for the disabled employee under Section 501—not Section 508. *See* 29 C.F.R. § 1630.2(o)(3).

The concepts of reasonable accommodations and the interactive process are not part of Section 508 or its corresponding regulations. Nor does GSA provide any support for such a notion. The law of Section 508 is clear: "Federal departments and agencies" are to "ensure . . . that the electronic and information technology allows" blind individuals "access to and use information and data that is comparable to the access to and use of the information" of their sighted colleagues absent "undue burden." 29 U.S.C. § 794d(a)(1). Notably, the statute makes no

---

[4] If the Court adopts GSA's framework in this case (and it should not), additional discovery would be necessary to address GSA's belated contentions made for the first time in its brief.

exception for cases where the disabled individual does not try to work with the department or agency to fix the accessibility problem. That is because Section 508 places the burden of compliance solely on the Federal government.

The cases cited by GSA do not support its request that this Court make new law in adding the interactive process to Section 508 insofar as every one of those cases dealt with reasonable accommodations—not Section 508 compliance. GSA Supp. Br. at 16, ECF No. 102. Although the two are often related, they are not one and the same. GSA merely states—without any citation—that "[t]he interactive process is also contemplated by Section 794d and the Revised Section 508 Standards, and the Court should conclude that the interactive process is a requirement of a claim." GSA Supp. Br. at 16, ECF No. 102. The Court should decline the invitation to intervene to place an additional barrier on disabled individuals where Congress did not do so.

Even if the interactive process was a necessary part of Section 508—a proposition that has no support—Mr. Ashley, in fact, engaged in the interactive process and continues to assist GSA in meeting its 508 obligations to this day. Ashley Decl. ¶ 51, ECF No. 81-6 (detailing continued efforts to assist GSA in meeting its legal obligations with 508 non-compliant software). The evidence demonstrates that Mr. Ashley repeatedly raised his concerns about accessibility of the subject software both before and after his administrative complaint. Pl.'s Mem. Ex. 4, ECF No. 81-7 (Dec. 30, 2015 email from P. Ashley to D. Perkins raising Citrix as an accessibility problem); Pl.'s Mem. Ex. 18, ECF No. 81-21 (May 16, 2011 email from P. Ashley to D. Perkins complaining of accessibility problems with ETAMS and FMIS); Pl.'s Mem. Ex. 18, ECF No. 81-21 (May 22, 2018 email from P. Ashley to D. Perkins complaining of accessibility problems with Business Objects). GSA's claim that "Plaintiff did not initiate the

interactive process regarding those technologies before filing an administrative complaint" is entirely unsupported. GSA Supp. Br. at 31, ECF No. 102.

    C.    **MR. ASHLEY HAS ESTABLISHED THAT HE IS ENTITLED TO AN INJUNCTION AGAINST GSA'S REPEATED VIOLATIONS OF SECTION 508**

GSA is violating Section 794d's requirement to "ensure . . . that the electronic and information technology allows" individuals with disabilities "access . . . that is comparable." 29 U.S.C. § 794d(a)(1)(A). GSA wrongly argues that Mr. Ashley "has failed to proffer evidence showing any genuine issue of material fact regarding any ICT failure to conform to the Revised 508 standards." GSA Supp. Br. at 31, ECF No. 102. This assertion is surprising; GSA has never once taken the position that the applications about which Mr. Ashley has complained have ever been accessible to him or were ever Section 508 compliant. Indeed, Mr. Ashley demonstrated that "Oracle BI, FMIS, ETAMS, Pegasys, SAP Business Objects, Citrix, OA, Tool, and IRIS, are, or have for extended periods of time been, incompatible with assistive technology, imposing limits on Mr. Ashley's access to those applications and the data the applications contain which do not apply to Mr. Ashley's sighted peers." Pl.'s Mem. at 25, ECF No. 82 (citing Pl.'s Resp. to Def.'s Statement of Material Facts, ¶¶ 220-229, 280-295, ECF No. 81-1).

For example, the technology Mr. Ashley needs to use for his job as a Financial Management Analyst is not coded in way that is compatible with his JAWS screen reader, rendering it inaccessible. Pl.'s Resp. to Def.'s Statement of Material Facts ¶¶ 218-225, 280-295, ECF No. 81-1 ("Facts"); Ashley Decl. ¶¶ 26-34, ECF No. 81-6. GSA admitted that Oracle Business Intelligence is not Section 508 compliant and "the entire application needs to be brought into compliance with the requirements of Section 508." Pl.'s Mem. Ex. 11, ECF No. 81-14 (collection of emails about lack of accessibility of Oracle Business Intelligence and failure to test the software when procured); *see also* Facts ¶¶ 220-229, 280-295, ECF No. 81-1. GSA

7

prevents Mr. Ashley from performing certain responsibilities or using certain applications because they are inaccessible, which limits Mr. Ashley's opportunities and promotability. Facts ¶¶ 334–38, ECF No. 81-1; *see also* Pl.'s Mem. at 10-14, ECF No. 81 (discussing the ways in which GSA has failed to make its technology accessible). GSA's wholly unsupported contention that it has voluntarily addressed the concerns raised by Mr. Ashely cannot be credited. And, the fact that GSA claims that they have worked with Mr. Ashely on resolving the claims is immaterial to the legal question at issue.

Moreover, Mr. Ashley has shown that GSA lacks the necessary systems and structures to comply with the law in the future, placing him at risk of ongoing and future harm that is the precise type of harm that a permanent injunction is intended to remedy. GSA frequently develops, procures, maintains, and uses technology that does not provide blind employees with comparable access to the data contained therein, and which does not support the use of assistive technology. For example, Oracle BI, FMIS, ETAMS, Pegasys, SAP Business Objects, Citrix, OA, Tool, and IRIS, are, or have for extended periods of time been, incompatible with assistive technology, imposing limits on Mr. Ashley's access to those applications and the data the applications contain which do not apply to Mr. Ashley's sighted peers. Facts ¶¶ 280–295, ECF No. 81-1.

GSA's Section 508 team is ineffective and it lacks the recourses needed to comply with the law. Facts ¶ 219, ECF No. 81-1:

- GSA does not implement its own policies around procuring accessible technology, Facts ¶¶ 226-28,
- GSA does not test technology before procuring it, Facts ¶¶ 224 224,

8

- GSA takes months to even test, never mind remedy, inaccessible technology reported by employees, Facts ¶ 59.

GSA's discovery responses from 2018 confirm that it does not test software for Section 508 compliance and it mostly does not know whether its applications are compatible with JAWS. Ex. 1(Def.'s Resps. to Pl.'s First Set of Interrogs.) at 19-20. As a result, GSA's own statistics demonstrate that most of its applications are not compliant with Section 508. Facts ¶¶ 280-295, ECF No. 81-1. *See also* Ex. 2 (Oct. 7, 2022 Letter from U.S. Senate to R. Carnahan) at 1 ("[a]ccessible websites and technology are extremely important to [disabled and aging] populations—and the federal employees who provide them services—yet there is mounting evidence the government is not meeting its obligations as required by Section 508."). Indeed, GSA has even publicly acknowledged that these repeated failures are an ongoing concern. Facts ¶¶ 219-222, ECF No. 81-1. Finally, GSA has never proffered any evidence that making the technologies compliant and accessible would be an undue burden. 29 U.S.C. § 794d(a)(1)(B).

GSA cannot claim now that Mr. Ashley did not demonstrate failure to comply with Section 508 when it repeatedly admitted that it did not even know whether its applications were compliant. The evidence that Mr. Ashley could not access these applications, when viewed against GSA's open disregard for Section 508, supports summary judgment in his favor. At the very least, it is certainly adequate to present the ultimate questions to the fact finder.

1. **MR. ASHLEY IS ENTITLED TO A PERMANENT INJUNCTION**

A permanent injunction is appropriate when "the traditional four-factor test is satisfied." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010). "In determining whether to enter a permanent injunction, the Court considers . . . (1) success on the merits, (2) whether the plaintiffs will suffer irreparable injury absent an injunction, (3) whether, balancing the hardships, there is harm to defendants or other interested parties, and (4) whether the public interest favors

9

granting the injunction." *ACLU v. Mineta*, 319 F. Supp. 2d 69, 87 (D.D.C. 2004). An injury is irreparable if it is "both certain and great, and actual and not theoretical." *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam) (quoting *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985)) (internal quotation marks omitted).

Here, Mr. Ashley has demonstrated that he is facing an irreparable, ongoing injury that cannot be adequately compensated by traditional legal remedies. As Mr. Ashley demonstrated in his Cross Motion for Partial Summary Judgement and the accompanying Statement of Facts and Exhibits, ECF No. 81, GSA continues to discriminate against Mr. Ashley by maintaining inaccessible technology that puts him on unequal footing with his peers. The harm Mr. Ashley faces is both "certain and great." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

GSA itself points out, damages here are not only inadequate to compensate Mr. Ashely for the discrimination he has suffered because of Defendant's violation of Section 508; they are unavailable. *See* 29 U.S.C. § 794a(a)(2), as incorporated by 29 U.S.C. § 794d(f)(3) (authorizing remedies for a violation of Section 508 that do not include damages).

Finally, the balance of hardships between the parties favors Mr. Ashley, not GSA. It is within the public interest for the government to follow the law, and to comply with Congressional mandates. *See Grace v. Whitaker*, 344 F. Supp. 3d 96, 146 (D.D.C. 2018) (finding that it is axiomatic that governmental compliance with the law is in the public interest). Once again, GSA provides no support nor alleges any hardship it would incur that would be somehow against public interest for this Court to require that GSA contract with information technology providers who can provide accessible electronic and information technology. Indeed, Section 508 of the Rehabilitation Act was passed with the precise aim of ensuring that Section 508 provides that

"[w]hen developing, procuring, maintaining, or using electronic and information technology, each Federal Department or agency . . . shall ensure . . . that the electronic and information technology allows . . . individuals with disabilities who are Federal employees to have access to and use of information and data that is comparable to the access to and use of the information and data by Federal employees who are not individuals with disabilities. . . ." 29 U.S.C. § 794d(a)(1)(A).

The case GSA relies on is easily distinguishable. In *Halkin v. Helms*, the challenged action was a CIA intelligence-gathering operation that had ended more than a decade prior, and the Court found plaintiffs could not show that they were likely to be surveilled in the future, and put this against the backdrop of court interference with highly sensitive intelligence operations. 690 F.2d 977, 1006 (D.C. Cir. 1982). Here, Mr. Ashely has demonstrated that he is facing ongoing harm, and there are no such national security concerns. *See supra* II.C.

### 2. MR. ASHLEY IS ENTITLED TO A TRIAL BY JURY

GSA argues that, because Mr. Ashley is not entitled to damages for his Section 508 claims, that he is not entitled to a jury trial because the remedy for a Section 508 claim is injunctive. GSA Supp. Br. at 28-29, ECF No. 102. But GSA does not address the overlap between Mr. Ashley's Section 508 claims and his failure to accommodate claims under Section 501. Even if a Section 508 claim—alone—is not triable to a jury, Mr. Ashley's Section 501 claim is triable to a jury and he should be allowed to present both interrelated claims to the jury in the interest of judicial economy. GSA cites no authority to the contrary.

### 3. MR. ASHLEY EXHAUSTED ALL OF HIS SECTION 508 CLAIMS

There is no dispute that Mr. Ashley was required to exhaust his Section 508 claim, and the *Orozco* decision has no bearing on exhaustion; rather, all *Orozco* did with respect to exhaustion was acknowledge that the parties disputed whether Mr. Orozco had exhausted all his

11

claims in dicta before remanding the question to the district court. *See Orozco*, 60 F.4th at 692. However, GSA's brief uses the Court's request for supplementary briefing as an opportunity to belabor points it made in its prior briefing. *Compare* Def.'s Mem. in Supp. of its Mot. to Dismiss or for Summ. J. at 10, ECF No. 80-1 ("Def.'s Mem.") *with* GSA Supp. Br. at 25, ECF No. 102. Indeed, Mr. Ashley addressed the same arguments GSA makes now in his opposition to Defendant's motion for summary judgment. *See* Pl.'s Mem. at 38, ECF No. 82.

It is undisputed that Mr. Ashley filed a formal Equal Employment Opportunity (EEO) complaint with the Office of Civil Rights for non-compliance with by GSA with Section 508. Pl.'s Mem. 7-9, ECF No. 82. GSA challenges the scope of that complaint and whether it was broad enough to put GSA on notice that software beyond Oracle Business Intelligence was not Section 508 compliant. Because Mr. Ashley has demonstrated that he met the statutory requirement for filing an administrative complaint, "the burden shifts" from Mr. Ashley to GSA to establish its "affirmative defense" of non-exhaustion. *See Kelly v. Raimondo*, Civil Action No. 20-3203, 2022 WL 14807447, at *7 (D.D.C. Oct. 26, 2022). "This means that [GSA] arguing the affirmative defense of non-exhaustion at the motion-to-dismiss stage of the proceeding can prevail only if plaintiff's 'failure to exhaust is plain from the allegations of the complaint or the undisputed records of the administrative proceeding . . . '" *Id.* (citation omitted). GSA cannot make such a showing.

Mr. Ashley's formal complaint gave GSA enough notice so as to exhaust his entire claim as to all inaccessible technology identified as issue here. While the description of the discrimination offered by Mr. Ashley in his administrative complaint mentions Oracle Business Intelligence software as an example, Mr. Ashley's "Remedy Sought" was not limited to Oracle Business Intelligence software. Def.'s Mem. Ex. 1-E at 2, ECF No. 80-4. There, Mr. Ashley

broadly requested that "[s]oftware to be made fully compliant with requirements of Section 508 of the rehabilitation act and compensatory damages for harm incurred through [his] career due to GSA's disregard of the law." *Id.*

A few weeks after Mr. Ashley filed his administrative complaint, GSA sent Mr. Ashley a notice that sought to narrow the scope of his complaint to "[w]hether [he] was subjected to discrimination . . . when . . . [he] learned Business Intelligence software used by the agency is not compliant with § 508 of the Rehabilitation Act . . . ." Def.'s Mem. Ex. 1-F at 1, ECF No. 80-4.[5] GSA's notice did not acknowledge the breadth of Mr. Ashley's complaint because GSA had every interest to try to limit the scope of Mr. Ashley's claims to try to excuse its pattern of delinquency with respect to Section 508.

One month later during GSA's investigation, Mr. Ashley submitted EEO Investigative Affidavit—a form affidavit used for EEO investigations—where he identified each of the tools at issue. Def.'s Mem. Ex. 3 at 3, ECF No. 80-4. He explained that his complaint was about all of the inaccessible software he needed to use for his job at the time:

> These work responsibilities have required me to use various GSA applications including the Financial Management Information system (FMIS), Pegasys, the Electronic Time &Attendance Management System (ETAMS), Inventory Reporting & Information System (IRIS), Real Estate Across the US (REXUS), Business Objects, Business Intelligence, Microsoft Excel, Microsoft Access, Microsoft Outlook, and the Google Suite of products. FMIS, Pegasys, ETAMS and several other GSA applications are not section 508 compliant. I have to rely on a reader and other team members to perform assigned tasks requiring the use of these applications. In these situations I am required to have a thorough understanding of the application content, menus, and icons to lead

---

[5] GSA's self-serving characterization of the alleged discrimination as having occurred when Mr. Ashley "learned" that Oracle Business Intelligence was not Section 508 compliant is disingenuous. As the record demonstrates, Mr. Ashley has had to struggle through navigating GSA's inaccessible technology for many years regardless of how and when he "learned" that technology was not Section 508 compliant.

13

> my reader and/or other team members threw [sic] executing queries and generating reports. This is particularly difficult when programs and their associated training materials are not section 508 compliant. ***Because so many of these applications are not accessible, I cannot, even with sighted assistance, effectively maximize my productivity when I have to rely upon these non-compliant tools***.

*Id.* (emphasis added); *see also* Pl.'s Mem. 34-35, ECF No. 81 at 34-35 (citing Def.'s Mem. Ex. 3 at 2, 3, 6, 8, ECF No. 80-4). Mr. Ashley further explained in his affidavit that "[m]y 17 year career has been encumbered by constantly addressing accessibility hurdles and performance appraisals that references me not taking advantage of opportunities to cross train in other GSA business lines." *Id.* at 8. Significantly, Mr. Ashley told the investigator that "[t]he noncompliance of the Oracle Business Intelligence software is not the only time GSA has fell [sic] short of the Section 508 requirements. Other non-compliant software packages include Citrix, ETAMS, FMIS, Business Objects, and Pegasys." *Id.*

Mr. Ashley's complaint, when viewed with his affidavit, gave GSA every opportunity to investigate his claims. *See Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 35 (D.D.C. 2019) (citing to plaintiff's EEO declaration as evidence that plaintiff had exhausted claims); *Parker v. Compass Grp. USA, Inc.*, 960 F. Supp. 2d 235, 238 (D.D.C. 2013) (citing supporting affidavit from plaintiff's coworker's EEO declaration as evidence that plaintiff had exhausted claims) *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir. 1994) ("[I]n assessing the scope of the EEOC charge, we may consider [plaintiff's] statements in a sworn affidavit that she filed in support of the charge.").

The fact that GSA chose to bury its head in the sand by arbitrarily construing Mr. Ashley's claim narrowly does not mean Mr. Ashley did not put the agency on notice of the full extent of his claims. Indeed, GSA testified that that the request relief in Mr. Ashley's complaint can be read to concern the inaccessibility of other software than Oracle BI. Pl.'s Mem. Ex. 6,

ECF No. 81-9 (Atkinson Dep. at 74:23–76:15). Mr. Ashley gave similar testimony:

> Q. In this part of your formal complaint of discrimination, was there any specific software you were referring to in terms of when you're talking about GSA's disregard for this law?
>
> A. ***There's a long list of software that I was referring to, including Oracle Business Intelligence that – throughout the complaint*** and in the past, even before this complaint, I complained about multiple packages. I just thought that the Business Intelligence is really one of the bigger triggering points because it was created to develop an efficiency, where we could use one database to create reports or queries.
>
> Q. You just used the words "long list of software." Did you discuss any items on that long list of software this morning with Ms. Seabrook?
>
> A. Yes.
>
> Q. Could you specify?
>
> A. ***ETAMS, IRIS, OA Tool, OA Billing, FMIS, ETAMs. There may have been some other ones.***
>
> ***Q. What about Pegasys?***
>
> ***A. Pegasys, Yes.***
>
> ***Q. What about BusinessObjectcs?***
>
> ***A. Yes***.

Pl.'s Mem. Ex. 2, ECF No. 81-5 (Ashley Dep. at 97:24-98:24) (emphasis added); *see also* Decl. of Philip Ashley ¶ 88, ECF No. 81-6.

The September 21, 2017 Investigative Report generated by GSA's EEO Complaints Investigator, Bruce Carter, stated that "Complainant provided attachments with his testimony regarding issues outside the scope of the accepted issues and are not accepted for investigation; therefore, this information will not be summarized in this report." Pl.'s Mem. Ex. 7 at 3, ECF No. 81-10. The report nonetheless goes on to summarize the "issues to be investigated" as including "ETAMS, FMIS, Pagasys [sic], Business Objects, and Citrix":

> **INVESTIGATIVE SUMMARY**
>
> **Statement of claims and issues to be investigated:** Whether the Complainant was discriminated against based on physical disability (visually impaired) when on February 5, 2017, he learned Business Intelligence software used by the agency is not compliant with § 508 of the Rehabilitation Act of 1973, as amended (29 U.S.C. § 794 (d)).
>
> Remedy Requested:
>
> - The Oracle Business Intelligence software must be made accessible within 60 days of a signed agreement.
> - All GSA Applications including ==ETAMS, FMIS, Pagasys, Business Objects,== and ==Citrix== be made accessible within 60 days of a signed agreement.
> - Compensatory damages: in the amount of $ 176,000. Calculation: 9 years at GS-13 without promotion * $12,000 in missed salary + 2 hours a week outside normal duty hours * 50 weeks * 17 years * $40 per hour = $176,000.

*Id.* at 5 (emphasis added). This evidence conclusively demonstrates that GSA had notice of Mr. Ashley's claim but sought to limit them out of pure self-interest but—even then—had to acknowledge the full scope of Mr. Ashley's relief when summarizing the "claims and issues to be investigated" from the face of his complaint. GSA cannot credibly argue now, as it does, that it had no notice of the scope of Mr. Ashley's Section 508 claims.

None of the cases cited by GSA from the past few years—including *Orozco*—change the analysis. Contrary to what GSA suggests, the *Kelly v. Raimondo* decision does not stand for the proposition that Mr. Ashley had to identify every piece of inaccessible software by name in his original administrative complaint. Rather, that unpublished opinion stands for the unremarkable proposition that exhaustion should be examined on a "claim-by-claim" basis. *Kelly v. Raimondo*, Civil Action No. 20-3203, 2022 WL 14807447, at *7 (D.D.C. Oct. 26, 2022) (quoting *Webster v. Del Toro*, 49 F.4th 562, 567 (D.C. Cir. 2022). Here, Mr. Ashley alleged a single claim: the software he needed to do his job was not accessible to him. He specified in his administrative complaint that he was seeking "[s]oftware to be made fully compliant with requirements of Section 508 of the rehabilitation act" as well as "compensatory damages for harm incurred

16

through [his] career due to GSA's disregard for this law." Pl.'s Mem. Ex. 1-E at 2, ECF No. 80-4. Then, he specified in his affidavit that the non-compliant software includes (i) Electronic Time System; (ii) Financial System; (iii) Pegasys; (iv) SAP Business Objects; (v) Citrix Access Gateway; and (vi) Oracle's Occupancy Agreement Tool. Pl.'s Mem. Ex. 3 at 3, ECF No. 80-4. The *Orozco* Court found that the plaintiff had exhausted his claims and this Court should find Mr. Ashley did the same.

    **4.**    **MR. ASHLEY'S CLAIMS ARE NOT MOOT**

No part of Mr. Ashley's Section 508 claim is moot. Mr. Ashley's claim is that GSA has failed and continues to fail to make electronic information technology accessible to him as it is required to do by Section 508. The fact that one or more pieces of inaccessible software have been phased out does not mean Mr. Ashley's claim is moot. Indeed, GSA has simply replaced old inaccessible tools with new inaccessible tools. And, as a result, Mr. Ashley continues to suffer the harms that are the basis of his March 14, 2018 complaint. GSA identifies FMIS and ETAMS as no longer being used by Mr. Ashley and/or GSA. GSA offers no evidence that the remainder of the inaccessible software is no longer in use or that it has become accessible. Mr. Ashley should be allowed to present evidence of this systemic wrong at trial.

To the extent GSA is arguing that they have cured the discrimination by voluntarily changing their behavior in light of this lawsuit, which Mr. Ashley posits it cannot demonstrate, and argues that this case is moot, the voluntary cessation exception applies. "The voluntary cessation of challenged conduct does not ordinarily render a case moot." *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012). To avoid the voluntary cessation exception, Defendants must rebut "an evidentiary presumption that the controversy reflected by the violation of alleged rights continues to exist." *Wills v. U.S. Parole Comm'n*, 882 F. Supp. 2d 60, 70 (D.D.C. 2012) (citation omitted) (internal quotation marks omitted). "Courts will only dismiss the claim if subsequent

events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. . . . And the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Mejia-Mejia v. U.S. Immigr. & Customs Enf't*, Civil Action. No. 18-1445, 2019 WL 4707150, at *8 (D.D.C. Sept. 26, 2019) (citations omitted) (internal quotation marks omitted).

### III. CONCLUSION

For the foregoing reasons, this Court should reject GSA's untimely arguments that have nothing to do with the *Orozco* decision. This Court should deny GSA's motion for summary judgment on Mr. Ashley's Section 508 claim and grant Mr. Ashley's motion because there is no genuine dispute that GSA has violated Section 508. *See* Pl.'s Mem. 24-28, ECF No. 81.

Dated: June 29, 2023

Respectfully submitted,

 /s/Daniel E. Valencia
Andrew Soukup, D.C. Bar No. 995101
Daniel E. Valencia, D.C. Bar No. 974818
Kristin Cobb, D.C. Bar No. 1030296
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
asoukup@cov.com
dvalencia@cov.com
kcobb@cov.com

Kaitlin Banner, D.C. Bar No. 1000436
Washington Lawyers' Committee For Civil
    Rights And Urban Affairs
11 Dupont Circle, NW, Suite 400
Washington, DC 20036-1226
Telephone: (202) 319-1000
Facsimile: (202) 319-1010
kaitlin_banner@washlaw.org

*Counsel for Plaintiff*