UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHILIP J. ASHLEY,<br><br>  Plaintiff,<br><br>v.<br><br>ROBIN CARNAHAN,<br>Administrator of the General Services Administration,<br><br>  Defendant. | Civil Action No. 18-0574 (JMC) |

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S SUPPLEMENTAL BRIEF**

  Defendant Robin Carnahan, in her official capacity as Administrator of the General Services Administration (the "Agency"), respectfully submits this reply in further support of the Agency's supplemental brief concerning Plaintiff Phillip Ashley's seven claims under Section 508 of the Rehabilitation Act, 29 U.S.C. § 794d (hereafter, "Section 794d" or "Section 508"), and in further support of the Agency's combined motion for judgment on the pleadings and summary judgment and opposition to Plaintiff's cross-motion for partial summary judgment.

  Plaintiff, a blind GSA employee, brings numerous claims against the Agency under the Rehabilitation Act, including seven claims under Section 794d based on allegations that he had issues accessing seven types of technology using his screen reader: (i) Electronic Time & Attendance Management System ("Electronic Time System" or "ETAMS"); (ii) Financial Management Information System ("Financial System" or "FMIS"); (iii) Pegasys; (iv) SAP Business Objects; (v) Citrix Access Gateway; (vi) Oracle Occupancy Agreement Tool; and (vii) Oracle Business Intelligence (collectively, "Subject Technologies"). On February 17, 2023, the D.C. Circuit in *Orozco v. Garland*, 60 F.4th 684 (D.C. Cir. 2023), ruled that Section 794d of the

Rehabilitation Act provides a cause of action for both members of the public and federal employees, which was contrary to the rulings of many district courts in this circuit that had uniformly declined to recognize a cause of action. The ruling also spoke to issues like statutory exhaustion, the nature the claim, and the relief available to individuals who prevail on such a claim.

In the supplemental brief filed after the *Orozco* decision, the Agency provided the Court with legal background about this entirely new cause of action under Section 794d and raised additional arguments in support of its dispositive motion on the seven Section 794d claims, based on the *Orozco* ruling and further legal argument that would have been unreasonable and even impracticable to make when filing the motion in 2020. *See* Def.'s Supp. Br., ECF No. 102. Plaintiff then addressed the Agency's arguments in a brief responding to the supplemental brief. ECF No. 104. A summary of the Agency's arguments, along with Plaintiff's responses, is provided below. For the following reasons, the seven claims that Plaintiff brings under Section 794d not survive the Agency's dispositive motion.

First, the Court lacks jurisdiction over six of the seven Section 794d claims, and the claims should be dismissed. Plaintiff has not and cannot carry his burden of pleading and proving that he exhausted his administrative remedies for claims based on six of the Subject Technologies, given that he failed to file an administrative complaint with the Agency about those technologies. *See* Def.'s Supp. at 25–28. Plaintiff misunderstands the nature of jurisdictional exhaustion, as evidenced by the positions he advances and the inapposite Title VII hostile work environment cases on which he relies, Pl.'s Resp. at 11–17, and therefore all Section 794d claims except the single claim based on Oracle Business Intelligence should be dismissed for lack of jurisdiction. In addition, the Agency has shown that at least two of the claims (those based on the Financial System and Electronic Time System technologies) are also moot, and thus should be dismissed on these

2

jurisdictional grounds as well. *See* Def.'s Supp. at 34–35. Plaintiff's response does not dispute this, and he even appears to concede that these two claims are moot. *See* Pl.'s Resp. at 17.

Second, the Court should dismiss or strike Plaintiff's request for a jury trial or damages for the Section 794d claims because Congress has not waived sovereign immunity for a jury trial or the right to damages for this claim. *See* Def.'s Supp. at 28–29. Plaintiff does not dispute this, but he nonetheless asks that any Section 794d claim be tried by a jury alongside any surviving Section 501 claim. *See* Pl.'s Resp. at 11. While the request may at first seem reasonable, the Court simply has no authority to grant it because of the lack of a waiver of sovereign immunity. Because "[s]overeign immunity is jurisdictional in nature," the terms of the United States' "consent to be sued in any court define that court's jurisdiction to entertain the suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). If a Section 794d claim survives summary judgment in a future case, the proper course is to proceed to a bench trial, regardless of whether other claims are heard by a jury.

Third, even if Plaintiff could show he exhausted each Section 794d claim—which he cannot—the Agency would nonetheless be entitled to summary judgment in its favor on each of these claims. *See* Def.'s Supp. Br. at 29–33. The Agency has carried its burden by showing that Plaintiff cannot produce evidence to support the presence of a genuine dispute on these seven claims, and Plaintiff has failed to come forward with specific facts to demonstrate a genuine issue for trial. No reasonable fact finder could conclude that Plaintiff engaged in a good faith, interactive process with the Agency before filing an administrative complaint for any of the claims. Nor could a reasonable fact finder conclude that the Agency's procurement, development, maintenance, or use of any of the Subject Technologies failed to conform to the Revised 508 Standards, which provide the technical requirements and criteria by which an Agency's compliance with Section 794d is measured. *See* Def.'s Supp. Br. at 29–33. As such, Plaintiff cannot—as a matter of law—

show any Section 794d violation so egregious that it justifies the extraordinary remedy of a permanent injunction in this matter. *See* Def.'s Supp. at 33–38.

Finally, the Court should deny Plaintiff's procedurally improper and legally unsupported motion to strike arguments from the Agency's supplemental brief on the ground that they do not discuss the ruling in Orozco specifically, but rather the significant changes brought in light of *Orozco*. *See* Pl.'s Resp. at 2–5. Plaintiff's counsel never attempted to confer with the undersigned counsel about this motion under Local Civil Rule 7(m), and Plaintiff provides no relevant legal authority to support the motion. Rather, the Court has broad discretion to allow supplemental briefing, as it did here in light of the significant changes in the law. Plaintiff suffers no prejudice from the Agency making these arguments, and in any event the interests of justice far outweigh his unconvincing claims of unfairness and prejudice.

For these reasons, the Court should grant the Agency's combined motion for judgment on the pleadings and for summary judgment on the Section 794d claims and deny Plaintiff's motion for partial summary judgment.

## ARGUMENT

**I.    Plaintiff Has Not Carried His Burden of Pleading and Proving That He Exhausted His Administrative Remedies for Six of the Seven Section 794d Claims, and the Court Should Dismiss These Claims for Lack of Jurisdiction.**

In *Orozco v. Garland*, 60 F.4th 684 (D.C. Cir. 2023), the D.C. Circuit confirmed that Section 794d of the Rehabilitation Act contains an exhaustion requirement, much like Section 501, and that it is jurisdictional. As a jurisdictional exhaustion requirement, Plaintiff bears the burden of pleading and proving that he exhausted his administrative remedies for each Section 794d claim. *See Rosier v. Holder*, 833 F. Supp. 2d 1, 8 (D.D.C. 2011) ("'under the Rehabilitation Act, exhaustion is a jurisdictional requirement that a plaintiff has the burden to plead and prove'"). Moreover, Section 794d's exhaustion provision requires that a disabled person file an

4

administrative complaint with the Agency about the technology he alleges has not been provided in compliance with Section 794d(a). *See* 29 U.S.C. § 794d(f)(1)("any individual with a disability may file a complaint alleging that a Federal department or agency fails to comply with [subsection 794d(a)(1)] in providing electronic and information technology"); *Orozco*, 60 F.4th at 687–88, 692.

In this case, Plaintiff filed a single administrative complaint with the Agency's EEO office, and that complaint presented a single claim. It asserted that the Agency had failed to comply with Section 508 of the Rehabilitation Act because Plaintiff learned that Oracle Business Intelligence was inaccessible to him. *See* ECF 80-4 at 26 (Administrative Complaint). The administrative complaint is unambiguous and cannot be read to include any other claim or technology. *See id.* The Agency sent Plaintiff the notice of acceptance of that claim for investigation, and it is undisputed that Plaintiff never objected to that notice of acceptance and that he never asked to amend his administrative complaint to add any other claim or technology.

In response, Plaintiff argues that his administrative complaint can be read in conjunction with an affidavit that he submitted during the subsequent EEO investigation (Pl.'s Resp. 11–17)— after the Agency had sent the notice of acceptance of the single Oracle Business Intelligence claim for investigation. This is because of one sentence included as part of Plaintiff's lengthy response to a question in a form affidavit about what work duties he performs, where after providing a long list of technologies he uses at work, he vaguely noted in a single sentence that "[Financial System], Pegasys, [Electronic Time System] and several other GSA applications" are non-compliant. Def.'s Mem. Ex. 3 at 3 (ECF No. 80-4 at 69). Plaintiff contends that the affidavit somehow transforms his unambiguous administrative complaint about the accessibility of Oracle Business Intelligence technology, to include the other six technologies he asserts in this action. Pl.'s Resp. 13–14.

Plaintiff misunderstands the nature of jurisdictional exhaustion. Plaintiff attempts to support his theory with case citations to three Title VII cases, where courts have considered an EEO affidavit when considering whether a plaintiff has exhausted his claim. *See* Pl.'s Resp. at 14, ECF No. 104 (citing *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 35 (D.D.C. 2019), *Parker v. Compass Grp. USA, Inc.*, 960 F. Supp. 2d 235, 238 (D.D.C. 2013), and *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir. 1994)). But those three cases concern claims of hostile work environment under Title VII and would not apply to the present claims under Section 794d of the Rehabilitation Act.

Unlike the Rehabilitation Act, Title VII does not contain a jurisdictional exhaustion requirement. *See Rosier v. Holder*, 833 F. Supp. 2d 1, 8 (D.D.C. 2011) ("In contrast to Title VII exhaustion, 'under the Rehabilitation Act, exhaustion is a jurisdictional requirement that a plaintiff has the burden to plead and prove.'"). As a result, the exhaustion requirements are different for Title VII claims. The burden is not on the plaintiff to prove, but on the defendant contesting exhaustion, and the legal standards for demonstrating exhaustion are different as well. The cases relied upon by Plaintiff are a great example of this: in each, the court is considering the exhaustion of a Title VII hostile work environment claim, and these types of claims have their own unique rules for non-jurisdictional exhaustion in the Title VII context. *See, e.g.*, *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 34 (D.D.C. 2019) (explaining that because Title VII's "'exhaustion requirement on a hostile work environment claim is less stringent' than for stand-alone claims of discrimination and retaliation, a plaintiff 'need only have filed an administrative complaint alleging some of the claims that comprise the hostile work environment claim'" (cleaned up)).

In addition to being a statutory requirement, there is good reason for requiring a complainant to identify each technology he alleges the agency has not provided in compliance with Section 794d. Different types of technology often will have different specialists assigned to them,

6

who have technical or managerial responsibilities over the technology and maintain the relationship with the technology provider. Identifying a concern about only one technology in an administrative complaint generally would not put the agency on notice of, or enable it to investigate, any other technology that a person may or may not mention later during an investigation. This fact is reflected in the present case; while the GSA specialist responsible for the Oracle Business Intelligence technology provided evidence and testimony during the investigation, there was no such evidence or testimony for the six unexhausted technologies raised in this civil action. *See* Def.'s Mem. Ex. 8, ECF No. 80-5 at 22–28 (EEO Counselor's Report).[1]

Plaintiff's administrative complaint only presents a claim about Oracle Business Intelligence failing conform with Section 508, *see* ECF 80-4 at 26 (Administrative Complaint), and Plaintiff has failed to carry his burden of proving he exhausted the other six Section 508 claims (let alone the many other Section 501 claims Plaintiff has asserted in this civil action). The Court should dismiss the other claims for lack of jurisdiction.

## II. Plaintiff Fails to Present Evidence Showing That There is a Genuine Issue for Trial for Any Section 794d Claim.

Even if Plaintiff could sustain his burden of showing he exhausted administrative remedies for each claim, which he has not and cannot do, the Agency would nevertheless be entitled to summary judgment on all of the Section 794d claims because Plaintiff has failed to proffer evidence showing there is a genuine dispute for trial for any of the Section 794d claims.

---

[1] Given that Section 794d claims may be brought by both agency employees and members of the public, it is logical that each complained-of technology must be clearly identified in the administrative complaint filed with the agency. By failing to include a technology in the administrative complaint, the agency is deprived of the opportunity to investigate, timely gather evidence, and to raise any defenses available to it, such as dismissing a claim as untimely under the regulations. *See* Def.'s Supp. at 27–28.

Summary judgment is appropriate where the movant can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.56(a). "For issues on which the nonmoving party would bear the ultimate burden of proof, a party moving for summary judgment can carry its burden on the summary judgment motion by pointing out 'that there is an absence of evidence to support the nonmoving party's case.'" *Lexington Ins. Co. v. Paddock Swimming Pool Co.*, 532 F. Supp. 3d 1, 7–8 (D.D.C. 2021) (quoting *Celotex*, 477 U.S. at 325); *see* Fed. R. Civ. P. 56(c) (stating that the moving party can satisfy its burden by showing "that [the nonmovant] cannot produce admissible evidence to support" the "presence of a genuine dispute"). After the moving party (the Agency) carries its burden, the nonmoving party (Plaintiff) cannot oppose the motion by "mere allegation or denial." *Jeffries v. Barr*, 965 F.3d 843, 859 (D.C. Cir. 2020). "[R]ather, the nonmovant must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 859. If "the nonmoving party fails to proffer evidence to support its assertions, then the moving party may prevail by citing that 'failure of proof.'" *Grimes v. District of Columbia*, 308 F. Supp. 3d 93, 102–03 (D.D.C. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *Celotex,* 477 U.S. at 322–23 (when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," there can be "no genuine issue as to any material fact," and the moving party is "entitled to a judgment as a matter of law").

This is exactly what has happened here. In the supplemental brief, the Agency pointed to the absence of evidence to support one or more elements of Plaintiff's Section 794d claims (Def.'s Supp. Br. at 29–33),[2] and Plaintiff has failed to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Jeffries*, 965 F.3d at 859.

---

[2] As discussed in the Agency's supplemental brief (Def.'s Supp. Br. at 22–24, 29–30), to pursue a Section 794d claim, the Court should require federal agency employees asserting a

8

First, no reasonable factfinder could conclude that Plaintiff satisfied the interactive process requirement[3] for each of the seven Section 794d claims, prior to filing an administrative complaint with the Agency alleging that its provision of a covered technology fails to comply with Section 794d. *See id*. Plaintiff provides record citations purportedly in support of four of the claims, without any analysis or elaboration. *See* Pl.'s Resp. at 6. Two of Plaintiff's record citations refer to the same information from the Agency's supplemental brief concerning SAP Business Objections, Electronic Time System ("ETAMS"), and Financial System ("FMIS") that showed that Plaintiff *failed* to engage in the interactive process. *Compare* Pl.'s Resp. at 6, *with* Def.'s Suppl. Br. at 31. The third citation refers to an exhibit not included in Plaintiff's statement of material facts, which Plaintiff inaccurately describes as a "Dec. 30, 2015 email from [Plaintiff] Ashley to [Daniel] Perkins raising Citrix as an accessibility problem." Pl.'s Resp. at 6. In fact, this is an email from *Perkins* to *Ashley* in which Perkins explains that VPN, not Citrix, was the current

---

Section 794d claim to plead and prove the following elements: (1) that he or she is an individual who has a disability; (2) the employer had notice of his disability; (3) the employer and employee engaged in good faith in the interactive process; (4) the technology is "information and communications technology" (hereafter, "ICT") that is subject to the Access Board standards, and the agency employer has failed to conform with the applicable Access Board standards when procuring, developing, maintaining, or using the ICT; and (5) the employee has demonstrated that he or she satisfies the four-part test for a permanent injunction.

[3]   In the Agency's supplemental brief, the Agency proposed and recommended that the Court include an interactive process requirement as an explicit element of a Section 794d claim, given that this requirement is effectively implied by the claim and because making it an explicit requirement would make sense from a practical standpoint. *See* Def.'s Supp. Br. at 16–19, 22–24. In the response, Plaintiff disagrees with the Agency's proposal and recommendation, but largely fails to meaningfully engage with any of the specific arguments advanced by the Agency. *See* Pl.'s Resp. at 5–7. It is important to note that, in Plaintiff's earlier summary judgment filings, he treated these Section 508 claims as effectively the same as a Section 501 reasonable accommodation claim, and in this discussion, he effectively concedes the reasonableness of requiring an interactive process as part of a Section 508 claim. *See* ECF No. 81 at 23–26 (discussing interactive process requirement); ECF No. 86 at 16–22 (discussing the interactive process requirement).

accessible method of accessing the GSA network, *see id.*, and this does not show the interactive process requirement has been satisfied for the Citrix technology.

Second, no reasonable factfinder could conclude that the Agency's procurement, development, maintenance, or use of the Subject Technologies failed to comply with Section 794d(a) requirements. It is the Revised 508 Standards that provide the technical requirements and criteria used to determine whether an agency has complied with Section 794d in providing a covered technology. *See* 29 U.S.C. § 794d(a)(2) (requiring the Access Board to establish "the technical and functional performance criteria necessary to implement the requirements" from Section 794d(a)(1), as well as to define the term "electronic and information technology"). Nowhere does Plaintiff proffer facts identifying what requirements or criteria from the Revised 508 Standards apply to the Subject Technologies at issue, let alone any evidence suggesting that the Agency failed to comply with them.[4]

Plaintiff effectively concedes that no such evidence exists. In the response, Plaintiff largely relies on vague, conclusory assertions that broadly criticize the Agency's procedures and practices, without any specific evidence or even connection to a material issue in this case. *See* Pl.'s Resp. at 7–9. This fails to raise a genuine dispute for trial. *See Bushrod v. District of Columbia*, 521 F. Supp. 3d 1, 22 (D.D.C. 2021) (plaintiff's proffered "disputed issues" were insufficient as they were "unsupported by citations to the record or address immaterial issues"); *Ginger v. District of*

---

[4]   As previously explained, this involves a multi-step process involving various determinations, starting with a determination of what the actual source of the accessibility issue is. After determining any technology that is the source of the accessibility issue, the inquiry proceeds to ask whether that source technology is ICT required to conform to the Revised 508 Standards; if it is, what type(s) of ICT features are implicated; what (if any) technical specification requirements apply to the ICT features, or else any performance criteria; whether the Agency has satisfied the foregoing requirements or criteria in procuring, developing, maintaining, or using the ICT at issue; if not, whether the standards have nonetheless been met under any of the alternative options for conformance; and if not, whether any of the exceptions apply. *See* Def.'s Supp. at 10–19, 31–33.

*Columbia*, 527 F.3d 1340, 1347 (D.C. Cir. 2008) ("vague conclusory assertions are insufficient to create a genuine issue of fact sufficient to withstand summary judgment").

Instead, Plaintiff tries another strategy, claiming to be surprised about the Revised 508 Standards providing the basis for measuring the Agency's compliance with Section 794d. He asserts that this is an "eleventh-hour policy-making effort" and that Plaintiff is prejudiced by the "belated contentions." Pl.'s Resp. at 4.

The Court need not and should not accept this unreasonable statement by Plaintiff, as the record clearly shows that Plaintiff and his counsel have long been aware that the Revised 508 Standards provide the technical requirements and criteria for measuring an agency's compliance with Section 794d(a). *See* Pl.'s Combined Opp. to Def.'s Mot. for Summ. J. & Pl.'s Cross-Mot. for Summ. J., ECF No. 81 at 7, 32, 34–35. Plaintiff's opposition and cross-motion for summary judgment, for example, states just that, and he even relies on one of the requirements (E203.1) to illustrate:

> The standards for technology that provide 'comparable access' in accordance with Section 508, are set forth in regulations promulgated by the Architectural and Transportation Barriers Compliance Board. 29 U.S.C. § 794d(a)(2)(A). Under those regulations that technology must be "accessible to and useable by individuals with disabilities *either directly or by supporting the use of assistive technology* . . . .". 36 C.F.R. § Pt. 1194, App. A E203.1 General (emphasis added).

ECF No. 81 at 32 (emphasis in original). *See also id.* at 34 ("Section 508's implementing regulations confirm this reading, and measure compliance with Section 508 by the technical components of the technology." (citing and quoting regulations implementing Revised 508 Standards)). These implementing regulations have existed almost as long as the law, with the most recent and current version of the standards issued in 2017, and it is Plaintiff who carries the burden of proof. Thus, only one conclusion can be reached: Plaintiff was aware that the Revised 508 Standards governed and he had every opportunity to conduct discovery on the Agency's

compliance with them in providing the technologies, and yet he has been unable to offer any evidence to support his allegations that the Agency has failed to comply with them.

In the response, Plaintiff also tries to improperly shift his evidentiary burden onto the Agency, by inaccurately claiming that it is the Agency that has failed to make the showing concerning the Revised 508 Standards. *See* Pl.'s Resp. at 3–4 n.2; *see also id.* at 3–5, 7–10. As noted, however, Ashley, as the plaintiff, "bears the burden of proof of [his] claims." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). By making the foregoing arguments, Plaintiff "fails to appreciate that the burden on a defendant moving for summary judgment may be discharged without factual disproof of the plaintiff's case;" rather, the Agency "need only identify the ways in which the plaintiff has failed to come forward with sufficient evidence to support a reasonable jury to find in [his] favor on one or more essential elements of her claim." *Id.* at 93. In short, Rule 56 does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323.

Because Plaintiff has failed to "present affirmative evidence" sufficient to allow a reasonable factfinder to find in his favor on any of the Section 794d claims, the Court should grant summary judgment in the Agency's favor on these claims. *See Durant v. D.C. Gov't*, 875 F.3d 685, 690 (D.C. Cir. 2017). Given that Plaintiff shows no evidence of a violation of Section 794d, it also follows that Plaintiff cannot show that he is entitled to the extraordinary remedy of the injunctive relief for these claims. *See* Def.'s Supp. Br. at 33–38.

### III.   The Court Should Deny Plaintiff's Procedurally Improper and Legally Unsupported Motion to Strike Arguments from the Agency's Supplemental Brief.

In Plaintiff's response, he moves to strike numerous arguments from the Agency's supplemental brief:

>(1) that engagement in the interactive process is required for injunctive relief under Section 508 claims, GSA Supp. Br. at 31, ECF No. 102, (2) that Mr. Ashley is not entitled to an injunction, *id.* at 33-34, (3) that there is no genuine issue of material fact regarding any ICT failure to conform to the **revised 508 standards**, *id.* at 312, and (4) that Mr. Ashley's claims are all moot, *id.* at 34.

Pl.'s Resp. at 2–5 (emphasis in original) (identifying the four arguments and claiming that they "should be struck").

This is a procedurally improper motion to strike. At no point did Plaintiff's counsel confer with the undersigned counsel before filing this motion, as required by Local Civil Rule 7(m).

Plaintiff's arguments are also incorrect and misguided. *First*, a mootness argument can be made at any stage of a case because it implicates the Court's jurisdiction and authority to act. *See Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) ("If the court determines that a claim is moot because it no longer presents a live controversy, the court lacks jurisdiction to entertain the claim, and must dismiss it.'" (citation omitted)).

*Second*, the other three arguments—which concern the merits—are reasonably and properly asserted in the supplemental briefing. While Plaintiff contends that the Agency's arguments do not relate to the *Orozco* decision itself and could have been raised earlier (Pl.'s Resp. at 2–5), this is short-sighted and ignores the significance of the D.C. Circuit's *Orozco* ruling, which radically changed the outlook for Section 794d claims. 60 F.4th 684. It marked the first time that the D.C. Circuit recognized a cause of action under Section 794d, and the ruling was contrary to the many district court decisions in this circuit that had uniformly declined to recognize a cause of action for federal employees under the statute. There does not appear to be any court decision in this circuit or elsewhere that has given more than a passing reference to the merits of a Section 794d claim.

Accordingly, after the *Orozco* ruling, the Court reasonably issued an order allowing either party to file supplemental briefing in light of the *Orozco* ruling, "to facilitate the resolution of the

13

pending dispositive motions." Feb. 21, 2023, Minute Order. The Court has "broad discretion in managing its docket and determining the order in which a case should proceed," *Grimes*, 308 F. Supp. 3d at 104, and its authority over supplemental briefing is part of this "prerogative to manage its docket," *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (supplemental briefing within the court's discretion); *NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116, 126 (D.D.C. 2020) ("The Court has broad discretion to allow parties to supplement the record."). What is more, district courts "often accept[] supplemental filings provided to apprise the Court of new developments that arguably could affect the Court's decision." *Tax Analysts v. Dep't of Just.*, 759 F. Supp. 28, 32 (D.D.C. 1991), *aff'd*, 965 F.2d 1092 (D.C. Cir. 1992).

Since the Court's order, the Agency has made clear that it planned to pursue and assert available and appropriate defenses in its supplemental briefing, not necessarily limited to the immediate ruling in *Orozco*. *See* ECF No. 97 at ¶¶ 6–8; April 4, 2023 Status Conference. And this Court has reasonably permitted the Agency to do so.

In its dispositive motion, the Agency had advanced numerous arguments in its favor on the Section 508 claims (ECF No. 83 at 14–21), but the *Orozco* decision required the Agency to withdraw the central argument that the claims failed to state a claim as a matter of law because the statute does not provide a cause of action for agency employees. In the absence of this ground, the Agency still had numerous alternative grounds for dismissal and summary judgment, but these arguments were not as developed and the interests of justice weigh in favor of allowing the Agency to make these arguments at this later stage, based on the same evidentiary record.  At the time that the Agency filed its dispositive motion, no court in this circuit had recognized a cause of action under Section 794d, and practical limitations necessitated that the Agency devote pages in its

14

briefing to the many other claims Plaintiff asserted under Section 501 of the Rehabilitation Act.[5] The Agency's supplemental briefing on the contours of the claim and available defenses should assist the Court with resolution of the pending motions. This will likely be the first time that a court considers the merits of a Section 794d claim, and in the absence of the legal background and arguments from the Agency, the Court potentially would need to decide the merits in the absence of any briefing from the parties. The interests of justice weigh in favor of providing the Court with background about this new claim, to assist the Court in applying the law and resolving the pending motions. *See Tax Analysts*, 759 F. Supp. at 32.

Plaintiff provides no relevant legal authority to support his motion to strike much of the Agency's supplemental brief, particularly in light of the Court implicitly granting the Agency permission to proceed with the foregoing arguments. *See supra*. Both of Plaintiff's case citations concern the well-settled principle that a party may not raise an argument for the first time in a reply brief (Pl.'s Resp. at 3), but that principle that does not apply here to this supplemental briefing, where Plaintiff has had the opportunity to respond to the Agency's arguments. In fact, the Agency consented to Plaintiff's request for a full month to prepare his response. ECF No. 103.

Nor has the Agency otherwise prejudiced Plaintiff, such as by introducing new evidence in support of its summary judgment motion. Unlike Plaintiff, who actually has submitted additional factual material not previously included (ECF No. 104-1), the Agency has relied only on the existing record and has not introduced any additional evidence. The Court should deny Plaintiff's procedurally improper and legally unsupported motion to strike arguments from the Agency's supplemental brief.

---

[5] The Agency tried to file an early-stage motion for judgment on the pleadings, to eliminate many of the claims in this litigation, ECF No. 52, but the Court would not allow it and ordered the parties to proceed to discovery, *see* May 23, 2023 Minute Order.

**CONCLUSION**

For the foregoing reasons, and those stated in the Agency's combined motion for judgment on the pleadings and for summary judgment and its supplemental brief, the Court should dismiss the Section 794d claims and otherwise grant judgment in the Agency's favor on such claims.

Dated:  July 7, 2023
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:  /s/ *Christina O'Tousa*
CHRISTINA O'TOUSA, DC Bar #241667
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
Telephone: (202) 252-2437
christina.o'tousa@usdoj.gov

*Attorneys for the United States of America*